UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

SPANDEX HOUSE, INC.,

                Plaintiff,

    -against-

HARTFORD FIRE INSURANCE COMPANY
and HARTFORD CASUALTY INSURANCE
COMPANY,

               Defendants.

------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__8/26/2019___

18-CV-8367 (VEC)

OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

Plaintiff Spandex House, Inc. ("Spandex House") has sued its insurers, Hartford Fire

Insurance Company and Hartford Casualty Insurance Company (collectively, "Hartford"), for

breach of contract and for a declaratory judgment. *See* Compl., Dkt. 6. Spandex House alleges

that Hartford has a duty to defend and indemnify it against claims asserted by a third party,

Rex Fabrics, in an action for copyright infringement, *Rex Fabrics v. Spandex House, Inc.*,

No. 1:17-CV-4736-SHS (S.D.N.Y.) (the "Rex Fabrics Action" or the "Action"). The parties

have cross-moved for summary judgment, pursuant to Federal Rule of Civil Procedure 56.

For the following reasons, Hartford's motion for summary judgment is GRANTED.

Spandex House's motion for summary judgment is DENIED. This case is DISMISSED. The

Court enters this ruling, however, without prejudice to Spandex House moving, in a letter-brief

of no more than five pages, to reopen this case should circumstances in the Rex Fabrics Action

change in such a way that a reasonable possibility of coverage of that Action arises.

**I.    Hartford's Insurance Coverage**

Hartford provides commercial general liability insurance to Spandex House.  *See* Defs.'

56.1 Stmt. ¶ 9; Pl.'s 56.1 Stmt. ¶ 9.  As relevant here, the parties' insurance agreement provides

coverage for "personal and advertising injury" as follows (the "General Coverage Provision"):

> We will pay those sums that the insured becomes legally obligated
> to pay as damages because of "personal and advertising injury" to
> which this insurance applies.  We will have the right and duty to
> defend the insured against any "suit" seeking those damages.
> However, we will have no duty to defend the insured against any
> "suit" seeking damages for "personal and advertising injury" to
> which this insurance does not apply.  We may, at our discretion,
> investigate any offense and settle any claim or "suit" that may
> result.

Compl. Ex. A at 167; *see also* Defs.' 56.1 Stmt. ¶ 12; Pl.'s 56.1 Stmt. ¶ 12.  The policy defines

"[p]ersonal and advertising injury," in relevant part, as "injury . . . arising out of":

> f.    Copying, in your "advertisement", a person's or
> organization's "advertising idea" or style of
> "advertisement"; [or]
>
> g.    Infringement of copyright, slogan, or title of any literary or
> artistic work, in your "advertisement."

---

[1]    All facts are undisputed unless otherwise stated.  The parties' insurance agreement and policy endorsements are docketed as Exhibit A to the Complaint, Dkt. 6-1.  The Court will refer to the agreement and endorsements using the page numbers of the ECF filing of that exhibit.

Additionally, the Court will refer to the parties' filings using the following abbreviations:  Hartford's Rule 56.1 Statement, Dkt. 20, and Hartford's Response to Spandex House's Rule 56.1 Statement and Further Counterstatement of Undisputed Facts, Dkt. 31, collectively as "Defs.' 56.1 Stmt."; Spandex House's Counterstatement to Hartford's 56.1 Statement, Dkt. 27, Spandex House's Response to Hartford's 56.1 Statement, Dkt. 28, and Spandex House's Response to Hartford's Further Counterstatement of Undisputed Facts, Dkt. 35, collectively as "Pl.'s 56.1 Stmt."; Hartford's Memorandum of Law in support of its motion for summary judgment, Dkt. 21, as "Defs.' Mem. of Law"; Spandex House's Memorandum of Law in response to Hartford's motion and in support of its cross-motion for summary judgment, Dkt. 26, as "Pl.'s Mem. of Law"; the Declaration of Richard Schurin in support of Spandex House's motion, Dkt. 29, and the Supplemental Declaration of Richard Schurin in support of Spandex House's motion, Dkt. 34, collectively as "Schurin Decl."; Hartford's Memorandum of Law in further support of its motion and in response to Spandex House's motion, Dkt. 30, as "Defs.' Resp. Mem. of Law"; and Spandex House's Reply Memorandum of Law in further support of its motion, Dkt. 33, as "Pl.'s Reply Mem. of Law."

Compl. Ex. A at 179; Defs.' 56.1 Stmt. ¶ 13; Pl.'s 56.1 Stmt. ¶ 13.[2]

These coverage provisions are subject to a number of exclusions. *See* Defs.' 56.1 Stmt. ¶ 22; Pl.'s 56.1 Stmt. ¶ 22. As relevant here, the policy contains a provision generally excluding coverage for allegations of infringement of intellectual-property rights (the "IP Exclusion"). The IP Exclusion states that Hartford's insurance does not apply to:

    i.    Infringement Of Intellectual Property Rights

        (1)    "Personal and advertising injury" arising out of any actual or alleged infringement or violation of any intellectual property right, such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity; or

        (2)    Any injury or damage alleged in any claim or "suit" that also alleges an infringement or violation of any intellectual property right, whether such allegation of infringement or violation is made by you or by any other party involved in the claim or "suit", regardless of whether this insurance would otherwise apply.

Compl. Ex. A at 161; *see also* Defs.' 56.1 Stmt. ¶¶ 25, 56–57; Pl.'s 56.1 Stmt. ¶¶ 25, 56–57. The IP Exclusion is, however, subject to an exception (the "Advertising Exception"), which states:

---

[2]    "Advertisement" is defined, in relevant part, as "the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through: (a)(1) Radio; (2) Television; (3) Billboard; (4) Magazine; (5) Newspaper; or (b) Any other publication that is given widespread public distribution." Compl. Ex. A at 177; *see also* Defs.' 56.1 Stmt. ¶ 16; Pl.'s 56.1 Stmt. ¶ 16. Endorsements to Hartford's policy amended this definition in ways not relevant here. *See* Defs.' 56.1 Stmt. ¶ 17; Pl.'s 56.1 Stmt. ¶ 17.

    "Suit" is defined, in relevant part, as "a civil proceeding in which damages because of . . . 'personal and advertising injury' to which this insurance applies are alleged." Compl. Ex. A at 180.

> [The IP Exclusion] does not apply if the only allegation in the claim or "suit" involving any intellectual property right is limited to:
>
> > (1)    Infringement, in your "advertisement", of:
> >
> > > (a)    Copyright;
> > > (b)    Slogan; or
> > > (c)    Title of any literary or artistic work; or
> >
> > (2)    Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement".

Compl. Ex. A at 161; *see also* Defs.' 56.1 Stmt. ¶ 28; Pl.'s 56.1 Stmt. ¶ 28.[3]

## II.    The Rex Fabrics Action

In December 2016, Rex Fabrics, a fabric wholesaler based in California, sued Spandex House for copyright infringement. *See* Schurin Decl. Ex. E; Defs.' 56.1 Stmt. ¶¶ 3–4, 40–41; Pl.'s 56.1 Stmt. ¶¶ 3–4, 40–41.[4]  In its Complaint, Rex Fabrics alleged that Spandex House and certain unnamed co-Defendants illicitly "created, sold, manufactured, caused to be manufactured, imported and/or distributed" fabrics and garments identical to five of Rex Fabrics's designs.  Schurin Decl. Ex. E ¶¶ 13, 19, 25, 30, 35; *see also* Defs.' 56.1 Stmt. ¶¶ 5–8;

---

[3]    The versions of the IP Exclusion and Advertising Exception set forth above are contained in a policy endorsement labeled "Form HC 00 97 12 10."  Compl. Ex. A at 161.  Another endorsement, labeled "Form HC 00 88 12 10," contains an exclusion and an exception that are nearly identically worded, except that the version in Form HC 00 88 12 10 adds the words "on 'your website'" to the Advertising Exception.  *See* Compl. Ex. A at 160 (Form HC 00 88 12 10, stating that the IP Exclusion does not apply if the only allegation in the "claim or 'suit'" is limited to "[i]nfringement, in your 'advertisement' *or on 'your web site'* . . . ." (emphasis added)).

    Forms HC 00 97 12 10 and HC 00 88 12 10 amended the parties' insurance agreement, which originally contained a narrower version of the IP Exclusion and a broader version of the Advertising Exception.  *See* Compl. Ex. A at 168; Defs.' 56.1 Stmt. ¶¶ 25, 56–57; Pl.'s 56.1 Stmt. ¶¶ 25, 56–57.  The parties agree that either Form HC 00 97 12 10 or Form HC 00 88 12 10 applies to this case, but they have not made clear which of these two endorsements applies.  *See* Defs.' 56.1 Stmt. ¶¶ 56–57; Pl.'s 56.1 Stmt. ¶¶ 56–57.  The Court need not resolve this question because the difference between the two endorsements is not material (other than to an argument about adequate notice, which the Court will address *infra*).

[4]    The Rex Fabrics Action was originally filed in the U.S. District Court for the Central District of California, Case No. 2:16-CV-9216-CAS, but was transferred in June 2017 to the Southern District of New York, Case No. 1:17-CV-4736-SHS, where it remains.

Pl.'s 56.1 Stmt. ¶¶ 5–8.  In subsequent filings, Rex Fabrics alleged that Spandex House infringed

its copyrights through Spandex House's "marketing" and "advertising," in addition to its

manufacturing, distribution, and sales activities.  Schurin Decl. Ex. J at 2.  Spandex House

counterclaimed, seeking a declaratory judgment that Rex Fabrics's copyrights were invalid

because Rex Fabrics had obtained them by misleading the U.S. Copyright Office.  Schurin Decl.

Ex. F at 13–14.  The litigation in the Rex Fabrics Action is ongoing.

In February 2017, Spandex House tendered to Hartford a claim for the defense and

indemnification of the Rex Fabrics Action.  *See* Defs.' 56.1 Stmt. ¶ 46; Pl.'s 56.1 Stmt. ¶ 46.

Hartford denied coverage because, in its view, the allegations in the Rex Fabrics Action fall

within the IP Exclusion and do not fall within the Advertising Exception.  *See* Defs.' 56.1 Stmt.

¶ 55; Pl.'s 56.1 Stmt. ¶ 55.

## DISCUSSION

### I.    Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Where the record

taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

genuine issue for trial."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks

omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87

(1986)).  To defeat summary judgment, the nonmoving party must come forward with "specific

facts showing that there is a genuine issue for trial."  *Sista v. CDC IXIS N. Am., Inc.*, 445 F.3d

161, 169 (2d Cir. 2006).  Courts "construe the facts in the light most favorable to the nonmoving

party and . . . resolve all ambiguities and draw all reasonable inferences against the movant."

*Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (per curiam).

## II. The Applicable Law

The parties agree that New York law applies to this case. *See* Defs.' Mem. of Law at 6; Pl.'s Mem. of Law at 8–9. Under New York law, "[i]nsurance policies are, in essence, creatures of contract, and, accordingly, subject to principles of contract interpretation." *In re Estates of Covert*, 97 N.Y.2d 68, 76 (2001); *see also Lepore v. Hartford Fire Ins. Co.*, 374 F. Supp. 3d 334, 343 (S.D.N.Y. 2019). The interpretation of a contract "is a matter of law for the court to decide." *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002). As the Second Circuit has explained:

> In determining a motion for summary judgment involving the construction of contractual language, a court should accord that language its plain meaning giving due consideration to the surrounding circumstances and apparent purpose which the parties sought to accomplish. Where contractual language is ambiguous and subject to varying reasonable interpretations, intent becomes an issue of fact and summary judgment is inappropriate. The mere assertion of an ambiguity does not suffice to make an issue of fact. Ambiguity resides in a writing when—after it is viewed objectively—more than one meaning may reasonably be ascribed to the language used. Only where the language is unambiguous may the district court construe it as a matter of law and grant summary judgment accordingly.

*Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006) (quoting *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990)). Any ambiguity in an insurance contract is construed against the insurer. *Ment Bros. Iron Works Co. v. Interstate Fire & Cas. Co.*, 702 F.3d 118, 124 (2d Cir. 2012) (citing *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003)).

An insurer has a duty to defend its insured against a third party's claims "whenever the allegations in [the third party's] complaint state a cause of action that gives rise to the reasonable possibility of recovery under the policy." *Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co.*, 16 N.Y.3d 257, 264 (2011). "[W]hatever may later prove to be the limits of the insurer's

responsibility to pay," *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 620 (2d Cir.

2001), the insurer has a duty to defend against claims if there is any "possible factual or legal

basis on which [the insurer] might *eventually* be held to be obligated to indemnify [the insured],"

*Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005) (emphasis added); *see also*

*Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 82 (2d Cir. 2006); *Auto. Ins. Co. of*

*Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006). In other words, the duty to defend is broader than

the duty to indemnify: the duty to indemnify arises only when a third party's claim *actually* lies

within a policy's coverage, but the duty to defend arises so long as the action could *potentially*

give rise to a covered claim. *See Century 21*, 442 F.3d at 82; *Fieldston*, 16 N.Y.3d at 264–65;

*Allianz*, 416 F.3d at 115.

An insurer has a duty to defend against actions that contain both covered and non-

covered allegations; this principle is referred to as the "entire action" rule. *See Fieldston*, 16

N.Y.3d at 264–65. Consistent with this rule, if any claims in the underlying litigation are

arguably or potentially covered, "the insurer is required to defend the entire action," including

both the arguably covered claims and the indisputably non-covered claims. *Id.* (citing *Town of*

*Massena v Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443 (2002); *Frontier*

*Insulation Contrs. v Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997)); *see also High Point*

*Design, LLC v. LM Ins. Corp.*, 911 F.3d 89, 95 (2d Cir. 2018).

Nevertheless, "unsubstantiated speculation" about facts that may be alleged or adduced in

the underlying litigation does not trigger a duty to defend. *RSUI Indem. Co. v. RCG Grp. (USA)*,

890 F. Supp. 2d 315, 331 (S.D.N.Y. 2012), *aff'd*, 539 F. App'x 3 (2d Cir. 2013); *see also*

*Stamford Wallpaper Co. v. TIG Ins.*, 138 F.3d 75, 81 (2d Cir. 1998); *Transportation Ins. Co. v.*

*Hugo Neu & Sons, Inc.*, 233 A.D.2d 234, 234 (1st Dep't 1996); Barry R. Ostrager & Thomas R.

Newman, 1 *Handbook on Ins. Coverage Disputes* § 5.03[a] at 363 (19th ed. 2019).  Moreover, the duty to defend cannot be imposed "through a strained, implausible reading of the complaint that is linguistically conceivable but tortured and unreasonable." *Century 21*, 442 F.3d at 83 (internal quotation marks omitted).  Rather, the duty to defend is triggered only if there is a "*reasonable* possibility of recovery" under the policy.  *Fieldston*, 16 N.Y.3d at 264 (emphasis added).

In determining whether there is a duty to defend, a court must compare the terms of the insurance policy to the allegations in the underlying litigation.  *See Century 21*, 442 F.3d at 83; *Cook*, 7 N.Y.3d at 137.  To do so, the court may consider materials filed in the underlying litigation, including "the allegations within the four corners of the underlying complaint," *Allianz*, 416 F.3d at 115, and "formal submissions" on the case's docket sheet, such as responsive pleadings and discovery reports, *Northville Indus. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 89 N.Y.2d 621, 635 (1997); *see also, e.g.*, *High Point*, 911 F.3d at 95.  The court may also consider any other facts within the knowledge of the insurer.  *See Allianz*, 416 F.3d at 115 (citing *Frontier*, 91 N.Y.2d at 175); *Fitzpatrick v. Am. Honda Motor Co., Inc.*, 78 N.Y.2d 61, 67–69 (1991).[5]  "[T]he analysis depends on the facts which are pleaded" in the litigation, not on "conclusory assertions" in the complaint or other documents.  *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 162 (1992).

The policyholder bears the initial burden of showing that the insurance policy covers the claims at issue.  *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000).  Once that burden is met, the burden shifts to the insurer to show that an

---

[5]     New York, like a majority of jurisdictions, allows courts to look beyond the four corners of the complaint in the underlying litigation to determine whether there is a duty to defend.  *See High Point*, 911 F.3d at 95 (citing *Fitzpatrick*, 78 N.Y.2d at 68).

exclusion to the policy applies. *Ment Bros.*, 702 F.3d at 121. If the insurer establishes the applicability of an exclusion, the burden shifts back to the policyholder to show that an exception to the exclusion applies and, therefore, that the disputed claims are covered. *Id.* at 121–22.

## III. Hartford's Policy Does Not Cover the Rex Fabrics Action

The parties agree, for purposes of this motion, that the Rex Fabrics Action falls under the General Coverage Provision, because the Action is a "suit" seeking damages for "personal and advertising injury." *See* Defs.' Mem. of Law at 1, 9; Pl.'s Mem. of Law at 2–3.[6] The parties disagree over whether the Action falls within the IP Exclusion and the Advertising Exception.

### A. The IP Exclusion Applies to the Rex Fabrics Action

#### 1. The IP Exclusion Is Unambiguous

The Court begins its analysis by considering each paragraph of the IP Exclusion. The first paragraph bars coverage for personal and advertising injury "arising out of" allegations of infringement of intellectual-property rights. Compl. Ex. A at 161. Spandex House does not argue that this language is ambiguous, and courts have held that exclusions containing similar language are unambiguous as a matter of law. *See Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.*, 88 N.Y.2d 347, 351 (1996); *Darwin Nat. Assur. Co. v. Westport Ins. Corp.*, No. 13-CV-2076, 2015 WL 1475887, at *12 (E.D.N.Y. Mar. 31, 2015) (collecting cases). The Court agrees with the reasoning of those cases.

The second paragraph is also unambiguous. It states that Hartford's insurance does not cover any damages alleged in "any claim or 'suit' that also alleges" infringement of intellectual property rights. Compl. Ex. A at 161. Put differently, if an action contains any allegation of

---

[6]     Although the argument has not been pressed in the present motions, Hartford has reserved its right to argue in future litigation that the Rex Fabrics Action does not allege "personal and advertising injury." *See* Defs.' Mem. of Law at 1 n.1, 9 n.5.

infringement of an intellectual-property right, whether alleged by the insured "or by any other party," the entire "suit" is excluded from coverage, "regardless of whether [the] insurance would otherwise apply." *Id.* While broad, this language does not lend itself to "varying reasonable interpretations." *Palmieri*, 445 F.3d at 187. Indeed, the second paragraph has been considered in nearly a dozen cases across the country, and those courts have consistently found that the provision is unambiguous as a matter of law. *See, e.g.*, *Lepore*, 374 F. Supp. 3d at 345 ("[T]he text of the IP Exclusion clearly applies [as] a complete bar to coverage for any claims brought in a suit that also alleges intellectual property infringement."); *Tela Bio, Inc. v. Fed. Ins. Co.*, 313 F. Supp. 3d 646, 659 (E.D. Pa. 2018) ("While perhaps harsh in its application, it cannot be seriously disputed that [the IP Exclusion] clearly and unambiguously excludes from coverage *all* allegations within a suit, if that suit contains *any* allegations of intellectual property rights violations."), *aff'd*, 761 F. App'x 140, 144 (3d Cir. 2019).[7] This Court agrees with and adopts those courts' reasoning.

Spandex House argues that the second paragraph of the IP Exclusion is ambiguous because Hartford agreed to provide a defense to a different policyholder under similar circumstances. *See* Pl.'s Mem. of Law at 18–19. In Spandex House's view, the fact that

---

[7] *See also Sentinel Ins. Co. v. Beach for Dogs Corp.*, No. 17-CV-1501, 2017 WL 6570079, at *5 (N.D. Ill. Dec. 21, 2017); *WAWGD, Inc. v. Sentinel Ins. Co.*, No. 16-CV-2917, 2017 WL 4340437, at *6 (S.D. Cal. Sept. 29, 2017); *Sentinel Ins. Co., Ltd. v. Yorktown Indus., Inc.*, No. 14-CV-4212, 2017 WL 446044, at *4 (N.D. Ill. Feb. 2, 2017); *Vitamin Health, Inc. v. Hartford Cas. Ins. Co.*, 186 F. Supp. 3d 712, 720–21 (E.D. Mich. 2016), *aff'd on other grounds*, 685 F. App'x 477 (6th Cir. 2017); *Pinnacle Brokers Ins. Sols. LLC v. Sentinel Ins. Co., Ltd.*, No. 15-CV-2976, 2015 WL 5159532, at *3 (N.D. Cal. Sept. 2, 2015); *Hartford Cas. Ins. Co. v. Dental USA, Inc.*, No. 13-CV-7637, 2014 WL 2863164, at *4 (N.D. Ill. June 24, 2014); *Tria Beauty, Inc. v. Nat'l Fire Ins. Co. of Hartford*, No. 12-CV-5465, 2013 WL 2181649, *8 (N.D. Cal. May 20, 2013); *Ventana Med. Sys., Inc. v. St. Paul Fire & Marine Ins. Co.*, No. 09-CV-102, 2010 WL 1752509, at *19–20 (D. Ariz. Jan. 13, 2010), *report and recommendation adopted in relevant part*, 709 F. Supp. 2d 744, 757–58 (D. Ariz. 2010), *aff'd*, 454 F. App'x 596 (9th Cir. 2011); *Molecular Bioproducts, Inc. v. St. Paul Mercury Ins. Co.*, No. 03-CV-0046, 2003 WL 23198852, at *5 (S.D. Cal. July 9, 2003).

The exceptions to the IP Exclusion were not at issue in these cases, other than in one case, *Sentinel Ins. Co. v. Beach for Dogs Corp.*, 2017 WL 6570079, at *4–5, decided in the Northern District of Illinois.

"different adjustors at [Hartford] reached different conclusions regarding the meaning and application of the [IP Exclusion]" creates an "ambiguity" in the exclusion. *Id.* at 19. The Court disagrees. Under New York law, extrinsic evidence may not be used "to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face." *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*, 769 F.3d 807, 815–16 (2d Cir. 2014) (quoting *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 163 (1990)). Because the language of the IP Exclusion is clear on its face, evidence of its application in a different case cannot be considered to create an ambiguity.[8]

## 2. The IP Exclusion Bars Coverage

Each of the two paragraphs of the IP Exclusion bars coverage for the Rex Fabrics Action. As to the first paragraph, the personal and advertising injury alleged in the Action indisputably "aris[es] out of" an alleged infringement of intellectual-property rights, Compl. Ex. A at 161, inasmuch as copyright infringement is the only cause of action alleged by Rex Fabrics, *see* Schurin Decl. Ex. E ¶¶ 36–49. The first paragraph of the Exclusion therefore bars coverage for all personal and advertising injury alleged in the Action. Spandex House does not argue that there is any basis for coverage of the Action other than the alleged personal and advertising injury; accordingly, pursuant to the first paragraph of the IP Exclusion, Hartford has no duty to defend against the Action.

The second paragraph of the IP Exclusion also applies. Because the Rex Fabrics Action contains allegations of copyright infringement, *see* Schurin Decl. Ex. E ¶¶ 36–49, the second

---

[8] Spandex House has not argued that Hartford should be estopped from denying it coverage based on its defense of the other policyholder; Spandex House argues only that Hartford's prior coverage decisions create an ambiguity in the IP Exclusion. *See* Pl.'s Mem. of Law at 18–19. Even if Spandex House had argued estoppel, though, Hartford's coverage of the other policyholder was subject to Hartford's reservation of the right to disclaim coverage in the future. *See* Defs.' Resp. Mem. of Law at 24–25. Such a reservation would likely be sufficient to defeat an estoppel argument. *See Gelfman v. Capitol Indem. Corp.*, 39 F. Supp. 3d 255, 269 (E.D.N.Y. 2014); 70A N.Y. Jur. 2d § 2144. Because Spandex House has not raised this issue, however, the Court need not consider it.

paragraph of the Exclusion dictates that Hartford's insurance policy does not apply to "[a]ny injury or damage" alleged in the entire "suit." Compl. Ex. A at 161.

Because the IP Exclusion applies to the Rex Fabrics Action, Hartford has no duty to defend Spandex House unless the Advertising Exception applies.

## B. The Advertising Exception Does Not Apply

### 1. The Advertising Exception Is Unambiguous

To this Court's knowledge, no court has interpreted the Advertising Exception under New York law, and only one, *Beach for Dogs Corp.*, 2017 WL 6570079, at *5, has interpreted it under the law of another state. While novel, the plain language of the Exception is not ambiguous.

The Advertising Exception states that the IP Exclusion does not apply "if the only allegation in the claim or 'suit' involving any intellectual property right is limited to: (1) [i]nfringement, in your 'advertisement,'" of copyright, slogan, or title, or "(2) [c]opying, in your 'advertisement,' a person's or organization's 'advertising idea' or style of 'advertisement.'" Compl. Ex. A at 161. The phrase "claim or 'suit' involving any intellectual property right" clearly refers to the claim or suit that was excluded from coverage pursuant to the IP Exclusion. *Id.* The Advertising Exception, therefore, only applies if "the *only* allegation" in the otherwise-excluded claim or suit is one of the forms of "[i]nfringement" or "[c]opying" that is specified in the Exception. *Id.* (emphasis added). As to those forms of infringement and copying, the term "in your advertisement" requires there to be "a causal relationship" between the alleged injury and the insured's advertisement; put differently, the alleged injury must have been caused in some way by the policyholder's advertisement. 3 *New Appleman Law of Liability Insurance* § 18A.04[2][a]–[b] (2019); *see also High Point*, 911 F.3d at 94, 96; *U.S. Fid. & Guar. Co. v. Fendi Adele S.R.L.*, 823 F.3d 146, 151–52 (2d Cir. 2016) (hereinafter *Fendi*); *Bridge Metal Indus., LLC*

12

*v. Travelers Indem. Co.*, 559 F. App'x 15, 19 (2d Cir. 2014); *R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.*, 287 F.3d 242, 247–48 (2d Cir. 2002); *accord GRE Ins. Group/Tower Ins. Co. v. Complete Music, Inc.*, 271 F.3d 711, 714 (8th Cir. 2001); *Simply Fresh Fruit, Inc. v. The Cont. Ins. Co.*, 94 F.3d 1219, 1222–23 (9th Cir. 1996).[9]

Reading all of this language together, the meaning of the Advertising Exception is clear and unambiguous: when a lawsuit is excluded from coverage pursuant to the IP Exclusion, the Advertising Exception will apply if "the only allegation" in the lawsuit is an act of infringement or copying that is causally related to the insured's advertisements. Compl. Ex. A at 161. If the lawsuit alleges any other theory of infringement—such as infringement caused by the policyholder's sales, distribution, manufacturing, or other activities unrelated to its advertisements—then the Exception does not apply. *See Fendi*, 823 F.3d at 151–52 (allegations that a policyholder sold counterfeit goods did not fall under a policy that covered "[i]nfringement of another's copyright, trade dress or slogan in [the policyholder's] 'advertising'"); *Bridge Metal*, 559 F. App'x at 19 ("A complaint does not claim an advertising injury if it alleges only the manufacture, importation, and sale of infringing goods without claiming harm arising from advertising . . . .").

Spandex House argues that this interpretation is unreasonable because, in its view, *all* copyright infringement *inherently* arises out of advertisement-related activity. *See* Pl.'s Reply Mem. of Law at 7–8. Citing the language of the Copyright Act, Spandex House points out that a copyright-infringement action must be based on allegations that the defendant violated the

---

[9]     In some of these cases, the applicable policies provided coverage for infringement "in the course of [the insured's] advertising," rather than, as here, "in [the insured's] advertisement." This difference in language is not material to this opinion, as both terms require a causal relationship between the advertisement and the injury. *See* 3 *Law of Liability Insurance* § 18A.04[2][b] (as between these two terms, "the practical effect is the same—under either standard, a policyholder must show both: (1) a covered offense; and (2) a causal relationship between the policyholder's advertising activities and the alleged injury").

plaintiff's exclusive right to "reproduce," prepare "derivative works" of, "distribute copies" of, "perform," or "display" a copyrighted work—all of which, in Spandex House's view, are a form of advertising. *Id.* (citing 17 U.S.C. § 106). The Court disagrees. Hartford's policy defines "advertisement" as "the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services" through radio, television, or other media. Compl. Ex. A at 177. As a matter of law, copyright infringement need not involve "widespread" dissemination, nor need it be committed "for the purpose of inducing" sales. *See, e.g.*, *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992).

Spandex House also argues that the Advertising Exception is ambiguous due to the presence of commas setting off the phrase "in your 'advertisement.'" Pl.'s Reply Mem. of Law at 5–6; *see* Compl. Ex. A at 161 (the IP Exclusion does not apply if the only allegation in the otherwise-excluded claim or suit is "[i]nfringement, in your 'advertisement,' of" copyright, slogan, or title). In Spandex House's view, those commas signal that the Exception applies as long as the allegations of infringement in the underlying lawsuit relate to the same copyright "as that which appears in the insured's advertisement." Pl.'s Reply Mem. of Law at 6. Put differently, Spandex House argues that even when allegations of infringement focus entirely on the policyholder's manufacturing, sales, or distribution activities, the Advertising Exception applies if the policyholder's advertisements display the same copyrighted work as that which is the subject of the infringement allegations. *See id.* This argument is unpersuasive. Courts have held that the mere act of displaying an infringing product in an advertisement, without a showing that the infringement was *caused* by the advertisement, is not sufficient to constitute infringement "in the advertisement." *See GRE Ins.*, 271 F.3d at 714 ("[T]he insured must do more than simply show that the infringing product was advertised or sold." (collecting cases)).

14

Accordingly, in line with the overwhelming weight of authority, the Court interprets the phrase "infringement, in your advertisement," as requiring a causal connection between the alleged act of infringement and the advertisement, rather than simply that the infringing items be displayed in the advertisement.[10]

Finally, Spandex House argues that the Advertising Exception applies to actions that contain allegations of infringement unrelated to advertising, as long as the allegations unrelated to advertising happen to be asserted within the "same claim" as the advertising-related allegations. Pl.'s Mem. of Law at 19; *see also* Pl.'s Reply Mem. of Law at 1; *cf.* Compl. ¶¶ 56–66. Thus, in Spandex House's view, when, as in the Rex Fabrics Action, infringement allegations relating to manufacturing and distribution are asserted within the same cause of action as infringement allegations relating to advertising, the Advertising Exception applies; the Exception would not apply only if the two sets of allegations were asserted in separate counts in the underlying complaint. *See* Pl.'s Mem. of Law at 19; Pl.'s Reply Mem. of Law at 1. This argument lacks merit. Nothing in Advertising Exception suggests that its application should depend on how different allegations are grouped together into claims. Quite the contrary. By its plain terms, the Advertising Exception only applies if infringement in the policyholder's

---

[10]    The phrasing of the Advertising Exception confirms this conclusion. Regardless of whether the prepositional phrase "in your 'advertisement'" is set off by commas, it modifies the noun "infringement," the term immediately before it. *See United States v. Rose*, 379 F. Supp. 3d 223, 228 (S.D.N.Y. 2019) ("[A] modifier is presumed to apply to the noun or pronoun closest to it." (collecting cases)). That means that the act of *infringement*, and not merely the copyrighted work that is the *subject* of the infringement claim, is the thing that must bear some relationship to the policyholder's advertisement. To support its contrary interpretation, Spandex House would need to rewrite the Advertising Exception to apply to any claim or suit alleging "infringement *of a copyrighted work that appears* in your 'advertisement.'" But the Court cannot rewrite an insurance agreement in order to create an ambiguity. *Fieldston*, 16 N.Y.3d at 264; *cf. United States v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 494–95 (5th Cir. 2014) (read "in isolation," the presence of a comma "could be significant," but a "purported plain-meaning analysis based only on punctuation is necessarily incomplete and runs the risk of distorting a statute's true meaning." (quoting *U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 454 (1993))).

advertisement is "the *only allegation* in the [otherwise-excluded] claim *or 'suit,'*" that is, the only allegation in the *entire* action. Compl. Ex. A at 161 (emphasis added).[11]

## 2. The Rex Fabrics Action Does Not Fall Under the Advertising Exception

### (i) The Rex Fabrics Action Contains Numerous Allegations of Infringement Unrelated to Spandex House's Advertisements

To determine whether a duty to defend exists, a court must compare the terms of the insurance policy to the allegations in the underlying litigation. *Century 21*, 442 F.3d at 83. Where, as here, an exclusion to coverage applies, the policyholder bears the burden of showing that an exception to the exclusion applies and, therefore, that the disputed claims are covered. *Ment Bros.*, 702 F.3d at 121–22.

The Complaint in the Rex Fabrics Action alleges that Spandex House and its co-Defendants "created, sold, manufactured, caused to be manufactured, imported and/or distributed" fabrics and garments identical to five of Rex Fabrics's designs. Schurin Decl. Ex. E ¶¶ 13, 19, 25, 30, 35. According to the Complaint, Spandex House (or one of its co-Defendants) "supplied" to a series of "retailers" garments that violate Rex Fabrics's copyrights. *Id.* ¶ 38. In a joint Rule 26(f) report filed in the Rex Fabrics Action, Rex Fabrics asserted that Spandex House and its co-Defendants "engaged in infringing activity by creating, importing, manufacturing, distributing, marketing, advertising, purchasing, selling, and/or transferring apparel and fabric," in violation of Rex Fabrics's copyrights. Schurin Decl. Ex. J at 2. In a discovery request, Rex Fabrics demanded from Spandex House "[a]ll documents referring or relating to [Spandex House's] distribution and sale" of the allegedly infringing products and all documents showing

---

[11] Spandex House raised some of these arguments for the first time in its reply brief, *see* Pl.'s Reply Mem. of Law at 5–8; accordingly, Hartford has moved for leave to file a sur-reply, *see* Dkt. 36. Because Spandex House's arguments fail on their merits, the Court need not consider Hartford's motion to file a sur-reply.

Spandex House's "gross profits from sales" of the products at issue. Schurin Decl. Ex. K at 6–7 (Requests Nos. 22, 26). Spandex House, for its part, acknowledged, in pleading its counterclaim, that it "sold in commerce the fabric alleged by [Rex Fabrics] to infringe its copyrights." Schurin Decl. Ex. F at 14 (Counterclaim ¶ 9).

Based on these documents, it is clear beyond doubt that the Rex Fabrics Action contains allegations of intellectual-property infringement other than infringement "in [Spandex House's] 'advertisement[s].'" Compl. Ex. A at 161. To be sure, some of Rex Fabrics's allegations appear to relate to Spandex House's advertisements. *See, e.g.*, Schurin Decl. Ex. E ¶ 39 (alleging that Spandex House committed infringement through its "catalogues" and "on-line websites"); *id.* Ex. J at 2 (accusing Spandex House of infringing copyrights through "marketing" and "advertising"); *id.* Ex. K at 6–7 (Requests Nos. 23–24). But the bulk of the allegations of infringement relate not to advertisements but to sale and distribution. Spandex House has made no showing that the allegations of sale and distribution arise out of—or are in any way causally related to—its advertising activities (other than the unremarkable assertion that some of the advertisements depict the allegedly infringing products). Because allegations of "infringement, in [Spandex House's] 'advertisement,'" are not "the only allegations" in the Rex Fabrics Action, the Advertising Exception simply does not apply. Compl. Ex. A at 161. Accordingly, Hartford has no duty to defend Spandex House.

### (ii) Spandex House Cannot Impose the Duty to Defend Based on Unsupported Speculation

Spandex House argues that Hartford has a duty to defend because it is possible that, someday, all of the allegations in the Rex Fabrics Action except those relating to advertising could be dismissed. *See* Pl.'s Mem. of Law at 14–15. If, for example, summary judgment were granted as to all allegations relating to Spandex House's sale and distribution, but not as to the

allegations relating to its advertising, infringement "in [Spandex House's] 'advertisement[s]'" would be the "only allegation" left in the Action, and the Advertising Exception would apply. Compl. Ex. A at 161; *see* Pl.'s Mem. of Law at 14–15. Spandex House is correct that the duty to defend attaches if there is a possibility that a claim might eventually be covered under an insurance policy. *See Allianz*, 416 F.3d at 115; *Fieldston*, 16 N.Y.3d at 264. But that duty may be imposed only if the possibility of future coverage is "reasonable." *Fieldston*, 16 N.Y.3d at 264. The duty to defend cannot be imposed based purely on "speculation as to what a third party may conceivably someday claim." *RSUI Indem. Co.*, 890 F. Supp. 2d at 331 (collecting cases); *see also Stamford Wallpaper*, 138 F.3d at 81 (to determine whether coverage applies, a court must not "hypothesize or imagine episodes or events that cannot be found among the allegations, and cannot reasonably be deduced from them"); *Mugavero*, 79 N.Y.2d at 163 (the duty to defend did not attach because the policyholder failed to provide "evidentiary support" for its assertions).[12]

Spandex House offers no basis—whatsoever—for the Court to infer that the Rex Fabrics Action might one day get skinnied down to allegations that relate solely to advertising. *See* Pl.'s Mem. of Law at 14–15. Indeed, this possibility has all but been foreclosed by Spandex House's concession in its counterclaim that it "*sold* in commerce the fabric alleged by [Rex Fabrics] to infringe its copyrights." Schurin Decl. Ex. F at 14 (Counterclaim ¶ 9) (emphasis added).[13]

---

[12]     *See also Hugo Neu & Sons, Inc.*, 233 A.D.2d at 234 ("A duty to defend cannot be triggered by . . . mere speculation that additional facts . . . may be developed at a later time."); *Handbook on Ins. Coverage Disputes* § 5.03[a] at 363 ("The duty to defend is not absolute and mere speculation as to the possibility that additional facts later may be developed will not trigger such a duty." (internal quotation marks omitted) (collecting cases)).

[13]     Taking judicial notice of the filings on the public docket of the Rex Fabrics Action, the Court notes that Spandex House moved for summary judgment against Rex Fabrics only on the ground that Rex Fabrics's copyrights are not valid. *See* Case No. 1:17-CV-4736-SHS, Dkts. 103, 110. Spandex House does not appear to be defending the Action on the theory that all allegations except those relating to advertising should be dismissed. And to date, more than two years after the litigation commenced, allegations relating to Spandex House's sale and distribution activities appear to still be at issue in the case. *See id.* Dkt. 119.

Spandex House's argument, then, is no more than sheer conjecture—with a dash of magical thinking. That is insufficient to sustain its burden of proving that the Advertising Exception applies.[14]

Spandex House's argument, moreover, would essentially read out of the Advertising Exception the phrase "the only allegation." Compl. Ex. A at 161. In *any* case containing a mix of allegations both related and unrelated to advertising, there will always be some hypothetical possibility that the allegations unrelated to advertising could, for one reason or another, be dropped or dismissed. Absent a requirement that the policyholder proffer some factual basis to support that possibility, Hartford would have a duty to defend against every case containing a mix of advertising and non-advertising claims. But the requirement in the Advertising Exception that advertising-related allegations be "the only allegation[s]" in an otherwise-excluded claim or suit is clearly intended to prevent just that result. *Id.* As written, the Exception limits Harford's duty to defend to lawsuits containing no such conglomeration of claims. *Id.* The Court cannot adopt an interpretation that would, as here, render a provision in an insurance policy meaningless. *See Consol. Edison Co. of New York v. Allstate Ins. Co.*, 98 N.Y.2d 208, 222 (2002).

### (iii) The Court's Ruling Does Not Make Hartford's Duty to Defend Narrower than Its Duty to Indemnify

"It is well settled that an insurance company's duty to defend is broader than its duty to indemnify." *Cook*, 7 N.Y.3d at 137. That is because the duty to defend is "measured against the

---

[14]     In reaching this conclusion, the Court is guided by the cardinal rules governing resolution of motions for summary judgment. A party such as Spandex House may neither obtain nor defeat summary judgment based on "conjecture," "surmise," or "some metaphysical doubt as to the material facts." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Trans Sport, Inc. v. Starter Sportswear, Inc.*, 964 F.2d 186, 188 (2d Cir. 1992)). Such a party must "offer some hard evidence showing that its version of the events is not wholly fanciful." *Id.* (quoting *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998)).

*possibility* of a recovery, [whereas] the duty to pay is determined by the *actual basis* for the insured's liability to a third person." *Allianz*, 416 F.3d at 115 (quoting *Frontier*, 91 N.Y.2d at 178) (internal quotation marks omitted) (emphasis added). Accordingly, courts ordinarily avoid interpreting insurance contracts in ways that "render the duty to defend narrower than the duty to indemnify." *Fitzpatrick*, 78 N.Y.2d at 65.

If, as Spandex House dreams might occur, the Advertising Exception were to apply in the future because all allegations except those relating to advertising were to magically disappear from the Rex Fabrics Action, Hartford would, presumably, have a duty to indemnify Spandex House for any liability resulting from those remaining allegations. In Spandex House's view, that possibility would lead to the anomalous result in which Hartford had no duty to defend (pursuant to the Court's ruling today) but did have a duty to indemnify. *See* Pl.'s Mem. of Law at 14–15. This result would, Spandex House argues, cause the duty to defend to be impermissibly narrower than the duty to indemnify. *See id.*

The Court disagrees. Several courts have held that the duty to defend may arise during the course of litigation, even if it does not exist at the outset of the case. *See, e.g.*, *High Point*, 911 F.3d at 95 (duty to defend attached after a counterclaim and discovery demands were served); *Stellar Mech. Servs. of New York, Inc. v. Merchants Ins. of New Hampshire*, 74 A.D.3d 948, 951 (2d Dep't 2010) (duty to defend attached after a second amended complaint was served); 3 *New Appleman on Insurance Law: Library Edition* § 17.05 (2019). That is because, as discussed above, the duty to defend exists when there is a reasonable possibility of recovery but does not exist when recovery is speculative or conjectural. If such a reasonable possibility of coverage were to arise during the course of the Rex Fabrics Action—that is, if it became reasonably, and not just hypothetically, possible that the case could be narrowed to include only

allegations of infringement in Spandex House's advertisements—the duty to defend would attach; that duty would then be broader than any subsequently-imposed duty to indemnify, which would attach only if Spandex House were found liable for a covered claim.

Because, based on the present record, Spandex House has offered no evidence of any reasonable possibility of coverage, Hartford has no duty to defend the Rex Fabrics Action. And because when "there is no duty to defend, there also is no corresponding duty to indemnify," *Ogden Corp. v. Travelers Indem. Co.*, 924 F.2d 39, 42 (2d Cir. 1991), the Court also finds, based on the present record, that Hartford has no duty to indemnify. The Court, however, enters this ruling without prejudice to Spandex House moving to reopen this matter should circumstances in the Rex Fabrics Action change in such a way that a reasonable possibility of coverage of that Action arises.

## IV.    Hartford's Policy Comports with Principles of New York Insurance Law

Apart from its challenges to the interpretation and application of Hartford's policy, Spandex House argues that the IP Exclusion and Advertising Exception run afoul of longstanding principles of insurance law and, therefore, that this Court should strike or modify those provisions. This argument lacks merit.

### A.    The Policy Does Not Run Afoul of the "Entire Action" Rule

Under well-established precedent, if a lawsuit contains a mix of allegations covered by an insurance policy and other allegations falling outside the scope of the policy, the insurer is required to defend the policyholder against the entire lawsuit, including both the covered and the non-covered allegations. *See Fieldston*, 16 N.Y.3d at 264–65. Known as the "entire action" rule (or the "complete defense" rule, or the "in for one, in for all" rule), "[i]f the insurer has a duty to defend any part of an action, then the insurer has a duty to defend the entire action." *Cowan v.*

*Codelia, P.C.*, No. 98-CV-5548, 1999 WL 1029729, at *4 (S.D.N.Y. Nov. 10, 1999) (citing

*Frontier*, 91 N.Y.2d at 175).

Spandex House argues that Hartford's policy "aim[s] to circumvent" the entire-action

rule. Pl.'s Mem. of Law at 16; *see also id.* at 11–12. In some sense, Spandex House is correct.

The language of the Advertising Exception mirrors the policy's definition of advertising injury

(contained within the definition of "personal and advertising injury").[15] Pursuant to the General

Coverage Provision, advertising injury is, ordinarily, covered by Hartford's policy. *See* Compl.

Ex. A at 167. But when the IP Exclusion applies, advertising injury is covered only if it is "the

only allegation" in a case. *See id.* at 161. Put differently, when the IP Exclusion applies,

Hartford has no duty to defend otherwise-covered allegations of advertising injury if they are

joined with allegations of other, unrelated sorts of injury. *See id.* This arrangement is unusual:

ordinarily, insurers agree to defend against suits alleging a *mix* of covered and non-covered

injuries, consistent with the entire-action rule. But, by expressly conditioning coverage on a

particular injury being "the only allegation" in a lawsuit, Hartford has essentially contracted

around the entire-action rule.

Spandex House argues that the Court should strike or modify the IP Exclusion and the

Advertising Exception in order to make the policy better comply with the spirit of the entire-

action rule. *See* Pl.'s Mem. of Law at 11–12, 16. Four points persuade the Court that would be

inappropriate. First is a matter of semantics. The entire-action rule requires insurers to defend

---

[15] The policy defines "personal and advertising injury," in relevant part, as injury arising out of "[c]opying, in your advertisement, a person's or organization's advertising idea or style of advertisement" or "[i]nfringement of copyright, slogan, or title of any literary or artistic work, in your advertisement." Compl. Ex. A at 179 (internal quotation marks omitted). The Advertising Exception states that in cases falling under the IP Exclusion, Hartford will provide coverage "if the only allegation" in the otherwise-excluded "claim or suit" is "[i]nfringement, in your advertisement," of "[c]opyright; [s]logan; or [t]itle of any literary or artistic work" or of "[c]opying, in your advertisement, a person's or organization's advertising idea or style of advertisement." *Id.* at 161 (paragraph numbers and internal quotation marks omitted).

against lawsuits that allege both covered and non-covered losses. *See Fieldston*, 16 N.Y.3d at 264–65. Technically, Hartford's policy complies with this rule—it just does so by defining a "covered loss" as one that is "the only allegation" in the underlying suit.[16] When advertising injury does not fall within this narrow definition (because it is combined with claims unrelated to advertising), the injury is not covered; the suit, then, alleges no covered injuries, and Hartford has no duty to defend, notwithstanding the entire-action rule. *See Pinnacle Brokers*, 2015 WL 5159532, at *5 (rejecting a variation of Spandex House's argument).

Second, the policy language is clear and unambiguous. While New York applies the entire-action rule, New York law also requires unambiguous insurance contracts to "be enforced as written." *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 21 N.Y.3d 324, 334 (2013). Because "[f]reedom of contract" is a "deeply rooted" tradition under New York law, this Court is not free to substitute Spandex House's notions of fairness and propriety for the express provisions of the parties' agreement; rather, "parties to an insurance arrangement may generally contract as they wish and the courts will enforce their agreements without passing on the substance of them." *Id.* (internal quotation marks omitted); *see also, e.g.*, *Read Prop. Grp. LLC v. Hamilton Ins. Co.*, No. 16-CV-4573, 2018 WL 1582291, at *12 (E.D.N.Y. Mar. 30, 2018). That Hartford's policy may "aim to circumvent" traditional insurance arrangements affords no basis for this Court to strike or modify it.[17]

---

[16]     *See* Compl. Ex. A at 168 (stating that the insurance policy "does not apply" to allegations within the scope of the IP Exclusion); *id.* at 167 (stating that Hartford "will have no duty to defend [Spandex House] against any 'suit' seeking damages for [injuries] to which this insurance does not apply").

[17]     New York recognizes a limited "public policy" exception to insurance agreements, pursuant to which a provision in an insurance policy can be ruled unenforceable. The Court of Appeals, however, has limited this doctrine to very narrow circumstances:  it applies only when a provision violates a state statute, violates a state insurance regulation, provides indemnification for punitive damages, or provides indemnification for conduct committed with the intent to cause injury. *See J.P. Morgan Sec. Inc.*, 21 N.Y.3d at 334–35; *Slayko v. Sec. Mut. Ins. Co.*, 98 N.Y.2d 289, 295 (2002). Absent these situations, the Court of Appeals is exceedingly "reluctant to inhibit freedom of contract by finding insurance policy clauses violative of public policy." *Slayko*, 98 N.Y.2d at 295; *see*

Third, the IP Exclusion and Advertising Exception, although unusual, comport with the broad purposes underlying the entire-action rule. The rationale behind the rule is that an insurer can provide its insured with a meaningful defense only if it provides a complete defense. As one frequently-cited case explained:

> To defend meaningfully, the insurer must defend immediately. To defend immediately, it must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not. To do so would be time consuming. It might also be futile: The plasticity of modern pleading allows the transformation of claims that are at least potentially covered into claims that are not, and vice versa.

*Buss v. Superior Court*, 16 Cal. 4th 35, 49 (1997) (citations and internal quotation marks omitted). Or as another jurist explained, a policyholder would be deprived of an effective defense if it were required to "parse the various counts and have one attorney appointed by the insurer defend against some and an attorney retained by the insured defend against others."

*Mount Vernon Fire Ins. Co. v. Visionaid, Inc.*, 477 Mass. 343, 356 (2017) (Gants, C.J., dissenting).[18] Put simply, the entire-action rule makes the duty to defend a binary proposition: either the insurer has a duty to defend, in which case it must defend the entire lawsuit, or the

---

also *J.P. Morgan Sec. Inc.*, 21 N.Y.3d at 334–35. Spandex House has made no showing that any of these exceptions apply, and this Court is not free to expand the public-policy exception beyond these boundaries. *See Maska U.S., Inc. v. Kansa Gen. Ins. Co.*, 198 F.3d 74, 80 (2d Cir. 1999) ("[I]n a diversity case the federal courts are not free to develop their own notions of what should be required by the public policy of the state, but are bound to apply the state law as to these requirements.").

[18]  *See also, e.g.*, *Lupu v. Loan City, LLC*, 903 F.3d 382, 394 (3d Cir. 2018) ("By preventing insurers from breaking a case into covered and non-covered pieces, courts avoid the potential waste and impracticality of a bifurcated defense."); *GMAC Mortg., LLC v. First Am. Title Ins. Co.*, 464 Mass. 733, 740 n.8 (2013) (language in insurance policies applying the entire-action rule reflects "general liability insurers' interest in exercising complete control over litigation against an insured"); *St. Paul Ins. Co. v. Texas Dep't of Transp.*, 999 S.W.2d 881, 884 (Tex. App. 1999) ("Once coverage has been found for any portion of a suit, an insurer must defend the entire suit. This is because the insurance contract obligates the insurer to defend its insured, not to provide a partial defense." (citations omitted)); 2 *Law of Liability Insurance* § 6.02[2][a] (a defense of factually "intertwined" claims should be conducted by a "single chief counsel").

insurer has no duty to defend the lawsuit at all.  What the insurer cannot do is provide a defense for some claims in a lawsuit but not others.

Hartford's policy does not violate these principles, as nothing in the policy would require Hartford to provide Spandex House with this sort of partial defense.  The IP Exclusion and the Advertising Exception determine when Hartford has an obligation to defend an action *at all*, not which claims *within* an action Hartford must defend.  When the second paragraph of the IP Exclusion applies, Hartford has no duty to cover "*[a]ny* injury or damage" alleged in the applicable suit.  Compl. Ex. A at 161 (emphasis added).  And in order for the Advertising Exception to apply, "the *only* allegation[s]" in the suit must be covered forms of "personal and advertising injury," making Hartford indisputably obligated to defend the entire action.  *Id.* (emphasis added).  In short, Hartford's policy does not alter the rule that if an insurer has a duty to defend, it must defend the entire action; instead, it simply narrows the range of cases in which the duty to defend exists in the first instance.

Fourth, and finally, the IP Exclusion and Advertising Exception are analogous to other insurance-policy provisions that have been upheld under New York law.  Several courts have upheld provisions that exclude from coverage "damage caused by an excluded peril even when covered perils also contribute to the damage" (known as "anti-concurrent" clauses).  *Alamia v. Nationwide Mut. Fire Ins. Co.*, 495 F. Supp. 2d 362, 368 (S.D.N.Y. 2007); *see also, e.g.*, *Clarke v. Travco Ins. Co.*, No. 13-CV-5140, 2015 WL 4739978, at *8 (S.D.N.Y. Aug. 7, 2015) ("[W]here a loss results from multiple contributing causes, coverage is excluded if the insurer can demonstrate that *any* of the concurrent or contributing causes are excluded by the policy." (quoting *ABI Asset Corp. v. Twin City Fire Ins. Co.*, No. 96-CV-2067, 1997 WL 724568, at *2 (S.D.N.Y. Nov. 18, 1997))); *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 255 F. Supp.

3d 443, 458–59 (S.D.N.Y. 2015), *aff'd*, 650 F. App'x 70 (2d Cir. 2016).  Similar to the provisions at issue in these cases, Hartford's policy excludes entire actions from coverage unless a particular injury is the only loss alleged in the case.

### B.    The Policy Does Not Violate *Fitzpatrick*

In *Fitzpatrick v. American Honda Motor Co.*, the New York Court of Appeals held that the duty to defend can attach based on facts about a third party's lawsuit that are not pleaded in the third party's complaint.  78 N.Y.2d at 67.  Specifically, the Court held that an insurer has a duty to defend when the insurer is aware of facts underlying the lawsuit that create a reasonable possibility of coverage—even if those facts are not alleged in the underlying complaint.  *See id.* at 70.  In so holding, the Court rejected the "wooden" and "mechanical[]" rule that "the complaint allegations are, in all cases, the *sole* determining consideration" in deciding whether a duty to defend exists.  *Id.* at 65–67.  In light of "the plasticity of modern pleadings," the Court reasoned, the insured's "right to a defense should not depend solely on the allegations a third party chooses to put in the complaint."  *Id.* at 68.

Because the Advertising Exception turns on whether certain losses are "the only allegation[s]" in a lawsuit, Compl. Ex. A at 161, Spandex House argues that the Exception violates the principle that "an insured's right to a defense should not depend solely on the allegations a third party chooses to put in the complaint," Pl.'s Mem. of Law at 15 (quoting *Fitzpatrick*, 78 N.Y.2d at 68); *see also* Pl.'s Reply Mem. of Law at 3–4.  Spandex House has plucked *Fitzpatrick*'s language out of context.  *Fitzpatrick* stands only for the proposition that a court must look beyond the four corners of a complaint to the universe of facts known to the insurer in order to determine whether a duty to defend exists.  Applied here, *Fitzpatrick* dictates simply that the Court must consider "unpleaded facts," 78 N.Y.2d at 68, when determining

whether the types of injury specified in the Advertising Exception are "the only allegation[s]" in the lawsuit, Compl. Ex. A at 161, and, therefore, whether Hartford has a duty to defend.

A hypothetical will make this principle clear. Hartford would have a duty to defend if the complaint at issue contained boilerplate assertions that the policyholder infringed copyrights through "manufacturing, distribution, and/or advertising" but the docket submissions, discovery, and other facts known to Hartford made clear that the policyholder was, for example, an advertising agency that had never manufactured or distributed anything. In that case, the facts underlying the litigation would make clear that infringement "in [the insured's] advertisement" was the only real allegation in the suit. Compl. Ex. A at 161. Hartford, then, would not be permitted to avoid the duty to defend through a "wooden" and "mechanical" application of the "four corners of the complaint" rule. *Fitzpatrick*, 78 N.Y.2d at 66–67. But that is all that *Fitzpatrick* would require.

This Court's analysis of the Rex Fabrics Action complied with *Fitzpatrick*. In determining whether "the only allegation" in that Action is infringement in Spandex House's advertisement, the Court looked to the facts underlying Rex Fabrics's allegations, not merely to the four corners of Rex Fabrics's Complaint. *See supra* Part III.B.2. The docket submissions, discovery requests, and Spandex House's own admissions make clear that Rex Fabrics's allegations are based, at least in part, on Spandex House's sale and distribution of allegedly copyrighted materials, not solely on Spandex House's advertising practices. *See, e.g.*, Schurin Decl. Ex. F at 14 (Spandex House's counterclaim, alleging that Spandex House "sold in commerce the fabric alleged by [Rex Fabrics] to infringe its copyrights").[19]

---

[19]     In *Fitzpatrick,* the court relied on unpleaded facts to find that there was a duty to defend, whereas this Court has looked to the Rex Fabrics Action's unpleaded facts to confirm that there is not a duty to defend. The Court, however, need not consider whether this is a material difference because both Spandex House and Hartford agree that consideration of unpleaded facts is appropriate here. *See* Pl.'s Mem. of Law at 6 (citing the Rule 26(f) report,

## C.    The Policy Is Not Illusory

Like any other contract, an insurance agreement that is "illusory" is unenforceable.

*See Lend Lease (US) Const. LMB Inc. v. Zurich Am. Ins. Co.*, 28 N.Y.3d 675, 684–85 (2017);

*Children's Apparel Network Ltd. v. Twin City Fire Ins. Co.*, No. 18-CV-10322, 2019 WL

3162199, at *5 (S.D.N.Y. June 26, 2019).  An agreement is "illusory" if it lacks mutuality of

obligation, that is, if it is "[a]n agreement in which one party gives as consideration a promise

that is so insubstantial as to impose no obligation."  *Lend Lease*, 28 N.Y.3d at 684.  An insurance

policy, however, is "not illusory if it provides coverage for *some* acts," even if it is subject to "a

potentially wide exclusion."  *Id.* at 685 (emphasis added).

Spandex House argues that the IP Exclusion is so broad, and the Advertising Exception

so narrow, that they effectively erase Hartford's coverage for "personal and advertising injury,"

thus rendering the policy illusory.  Pl.'s Mem. of Law at 21–25.  The Court disagrees.  It is not

difficult to imagine scenarios in which the Advertising Exception would apply.  If, for example,

Spandex House used a competitor's slogan in its advertisements without permission, it could be

sued for "[i]nfringement, in [its] advertisement, of . . . [s]logan."  Compl. Ex. A at 161.[20]  Or if it

used a copyrighted photograph in its advertisements without the proper license, it could be sued

for "[i]nfringement, in [its] advertisement, of . . . [c]opyright."  *Id.*  And so forth.  In each of

these examples, the alleged infringement would be wholly unrelated to manufacturing, sale,

distribution, or other non-advertising activities.  The allegations of "[i]nfringement, in [Spandex

---

counterclaim, discovery demands, and other materials in the Rex Fabrics Action); Pl.'s 56.1 Stmt. ¶¶ 7–8, 45, 48–49 (same); Defs.' Resp. Mem. of Law at 19–21.  Moreover, had the Court confined its analysis only to Rex Fabrics's Complaint, the Court would have still concluded that Hartford has no duty to defend because the Complaint alleges that Spandex House and its co-Defendants committed copyright infringement through sales, distribution, and manufacturing.  Schurin Decl. Ex. E ¶¶ 13, 19, 25, 30, 35.

[20]        A "slogan" is a "phrase[] used to promote or advertise a house mark or product mark."  *CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 78 (2d Cir. 2013) (quoting *Hugo Boss*, 252 F.3d at 618) (emphasis omitted).

House's] advertisement[s]," therefore, would be "the only allegation[s]" in the lawsuit, in which case the Advertising Exception would apply. *Id.*

All of this said, there is no doubt that the Advertising Exception is exceedingly narrow (and that the IP Exclusion is exceptionally broad). Most wholesalers, such as Spandex House, sell and distribute the products that they advertise. When these companies are accused of copyright infringement, it would seem most likely that allegations relating to the sale, distribution, and advertisement of the protected products would all be joined in the same lawsuit. In such circumstances, presumably, the Advertising Exception would not apply. Nevertheless, a policy is not illusory merely because its exclusions are "potentially wide." *Lend Lease*, 28 N.Y.3d at 684. Because the Advertising Exception provides coverage for *some* losses, it is not unenforceable on these grounds.

### D. Hartford Provided Ample Notice of the IP Exclusion and the Advertising Exception

In order to amend an insurance agreement, an exclusion must be "stated in clear and unmistakable language." *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 652 (1993); *see also Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311 (1984) ("[E]xclusions or exceptions from policy coverage must be specific and clear in order to be enforced.").

Spandex House argues that the policy endorsements that expanded the IP Exclusion did not provide clear notice of their effect on Spandex House's coverage. *See* Pl.'s Mem. of Law at 12–13; Pl.'s Reply Mem. of Law at 8–10. Specifically, Spandex House points out that one of these endorsements, Form HC 00 88 12 10, stated that it "broaden[ed] coverage," leading Spandex House (allegedly) to believe that the endorsement would expand, not narrow, its intellectual-property-related coverage. *See* Pl.'s Mem. of Law at 12–13 (citing Compl. Ex. A at 159).

This argument falls short. Hartford amended the IP Exclusion through two endorsements, Form HC 00 88 12 10 and Form 00 97 12 10, but only Form HC 00 88 12 10 contained the reference to "broaden[ing] coverage." Compl. Ex. A at 159, 161. Moreover, both of the endorsements stated, in large, bold headers, "This endorsement changes the policy. Please read it carefully." *Id.* And one of the endorsements stated specifically, "Amendment of Exclusions and Definition – Personal and Advertising Injury." *Id.* at 161. Courts have held that this sort of language provides adequate notice that an endorsement may narrow coverage. *See CGS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 84 (2d Cir. 2013). Further, several courts have rejected Spandex House's argument in the context of the specific endorsements at issue here. *See Lepore*, 374 F. Supp. 3d at 351; *Pinnacle Brokers*, 2015 WL 5159532, at *4; *Ventana*, 2010 WL 1752509, at *20. Accordingly, Spandex House had ample notice that Hartford's endorsements could narrow its insurance coverage, regardless of the stray reference to "broaden[ing] coverage." Compl. Ex. A at 159.

Moreover, the reference to "broaden[ing] coverage" in Form HC 00 88 12 10 states in full, "This endorsement broadens coverage for 'your web site' or internet-related activities." Compl. Ex. A at 159. That was an appropriate word choice, given that the endorsement adds the words "on 'your web site'" to the Advertising Exception. *See id.* at 160 ("[T]his exclusion does not apply if the only allegation in the claim or 'suit' involving any intellectual property right is limited to . . . [i]nfringement, in your 'advertisement' *or on 'your web site' . . . .*" (emphasis added)). No reasonable person could have interpreted the reference to "broaden[ing] coverage" as referring to anything other than the addition of the term "or on your website." Spandex House, therefore, has no grounds to argue that the language confused or misled it about the scope of the IP Exclusion.

## CONCLUSION

For all the foregoing reasons, Hartford's motion for summary judgment is GRANTED. Spandex House's motion for summary judgment is DENIED. This case is DISMISSED. The Court enters this ruling, however, without prejudice to Spandex House moving, in a letter-brief of no more than five pages, to reopen this case should circumstances in the Rex Fabrics Action change in such a way that a reasonable possibility of coverage of that Action arises.

The Clerk of Court is respectfully directed to terminate all open motions and to CLOSE the case.

**SO ORDERED.**

Date:  **August 26, 2019**
       **New York, New York**

                                                  _____
                                                        **VALERIE CAPRONI**
                                                  **United States District Judge**